UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v.      § | EP-23-cv-00342-KC |
| § | |
| **DIRECT 2 HOME LLC, aka D2H SOLAR,** a § | |
| Massachusetts Limited Liability Company, § | |
| **BRADLEY PEREIRA** and **JULIO CABRAL** § | |
| § | |
| **Defendant.** § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant DIRECT 2 HOME LLC aka D2H SOLAR ("D2H") is a limited liability company organized and existing under the laws of Massachusetts and can be served via registered agent Northwest Registered Agent Service, Inc., 82 Wendell Avenue, Suite 100, Pittsfield, Massachusetts 01201.

3. Defendant BRADLEY PEREIRA ("Pereira") is a natural person, resident of Connecticut, Owner, and operator of Defendant Direct 2 Home LLC, personally participated in the phone calls alleged herein, and can be served at 14 Tait Road, Old Greenwich, Connecticut 06870.

4. Defendant JULIO CABRAL ("Cabral") is a natural person, resident of Connecticut, personally placed phone calls to Plaintiff, and can be served at 78 Englewood Avenue, Apartment

1

3, Waterbury, Connecticut 06705.

**JURISDICTION AND VENUE**

5.     Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

6.     This Court has specific personal jurisdiction over Defendant D2H because Defendant D2H purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant D2H's purposeful contacts with Texas and the litigation.

   a. Defendant D2H targets Texas when marketing legal services and regularly conducts business in this District, including telephone solicitation.

   b. Its agents sent calls to Plaintiff's El Paso area phone number with area code 915 after being given a Do Not Call request.

   c. The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant D2H, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

7.     This Court has specific personal jurisdiction over Defendant Cabral because Defendant Pereira purposefully availed himself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Pereira's purposeful contacts with Texas and the litigation.

   a. Defendant Pereira ordered D2H to target Texas when marketing legal services and regularly conducts business in this District, including telephone solicitation.

   b. Defendant Pereira ordered his agents to place calls to Plaintiff's El Paso area

      phone number with area code 915 after being given a Do Not Call request.

    c. Defendant Pereira personally participated in the phone calls alleged herein.

    d. The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant Pereira, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

8. This Court has specific personal jurisdiction over Defendant Cabral because Defendant Cabral purposefully availed himself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Cabral's purposeful contacts with Texas and the litigation.

    a. Defendant Cabral purposefully targeted Texas when marketing legal services and regularly conducts business in this District, including telephone solicitation.

    b. Defendant Cabral personally placed calls to Plaintiff's El Paso area phone number with area code 915 after being given a Do Not Call request.

    c. The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant Cabral, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Defendants is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

23. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

24. Defendant D2H offers solar panel services.

25. Plaintiff received at least seventeen (17) unauthorized calls to his personal cell phone ending in 4604 from Defendants from September 2, 2023, to September 7, 2023, soliciting solar panel installation.

26. Plaintiff received a series of telemarketing phone calls from an anonymous offshore telemarketer calling from phone number 209-457-2342.

27. Plaintiff has outlined each of the phone calls in Table A.

28. On September 5, 2023, Plaintiff answered the fourth call from phone number 209-457-2342 and was connected to the offshore telemarketer.  The offshore telemarketer did not properly

identify himself, the company he worked for, and on whose behalf the calls had been placed. The offshore telemarketer informed Plaintiff that some unnamed person would be calling him for a solar appointment.

29. On September 5, 2023, Plaintiff received a phone call from Defendant Cabral. Defendant Cabral was confirming the appointment set be the offshore telemarketer.

30. Later, on September 5, 2023, Plaintiff had a Zoom meeting with Defendant Pereira and Defendant Cabral in which they attempted to sell Plaintiff solar panels.

31. On September 6, 2023, Defendant Cabral called Plaintiff five times in the span of six minutes. Plaintiff was unable to answer the phone because of an emergency.

32. Plaintiff was extremely irritated and sent Defendant Cabral a text message that stated, "If you call me 4 times in 4 minutes and I don't answer, obviously I'm engaged in something and can't answer. No need to make that 5th call. Don't call me for the 6th time."

33. Defendant Cabral ignored Plaintiff's request to not be called again and began to text Plaintiff.

34. On September 6, 2023, Plaintiff was again called by the Pakistani telemarketer. The telemarketer asked Plaintiff why he did not answer the phone when Defendant Cabral had called. Plaintiff responded by telling the telemarketer, "I told him (Cabral) not to call me again, and now I am telling you. Do not call me again." The telemarketer called Plaintiff twelve minutes later.

35. Defendant Cabral continued to call Plaintiff with unwanted phone calls. Defendant Cabral even began to send Plaintiff messages on WhatsApp when Plaintiff would not answer Defendant Cabral's calls and texts.

36. Table A shows the calls sent to Plaintiff by and on behalf of Defendant D2H.

TABLE A:

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 09/02/2023 | 1:03 PM | 209-457-2342 | Pakistani telemarketer. Missed call |
| 2. | 09/02/2023 | 2:05 PM | 209-457-2342 | Pakistani telemarketer. Declined call |
| 3. | 09/05/2023 | 12:03 PM | 209-457-2342 | Pakistani telemarketer. Call dropped. |
| 4. | 09/05/2023 | 2:22 PM | 209-457-2342 | Pakistani telemarketer. Said an anonymous solar company would call |
| 5. | 09/05/2023 | 4:58 PM | 401-470-2187 | Julio Cabral called and set a Zoom appointment |
| 6. | 09/06/2023 | 9:05 AM | 401-470-2187 | Did not answer. Not seeking compensation |
| 7. | 09/06/2023 | 9:07 AM | 401-470-2187 | Did not answer. Not seeking compensation |
| 8. | 09/06/2023 | 9:09 AM | 401-470-2187 | Did not answer. Not seeking compensation |
| 9. | 09/06/2023 | 9:10 AM | 401-470-2187 | Did not answer. Not seeking compensation |
| 10. | 09/06/2023 | 9:11 AM | 401-470-2187 | Declined call. Not seeking compensation |
| 11. | 09/06/2023 | 9:12 AM | 401-470-2187 | Text message after telling Cabral not to call anymore |
| 12. | 09/06/2023 | 9:13 PM | 401-470-2187 | Text message after telling Cabral not to call anymore |
| 13. | 09/06/2023 | 9:25 AM | 401-470-2187 | Text message after telling Cabral not to call anymore |
| 14. | 09/06/2023 | 10:31 AM | 209-457-2342 | Pakistani telemarketer asking why I did not answer the phone and talk Cabral. Informed the telemarketer that I told Cabral not to call and I am now telling him not to call. |
| 15. | 09/06/2023 | 10:43 AM | 209-457-2342 | Pakistani telemarketer called back and said he was setting another appointment |

| 16. | 09/06/2023 | 1:37 PM | 401-470-2187 | Unanswered call from Cabral |
| --- | --- | --- | --- | --- |
| 17. | 09/07/2023 | 7:51 AM | 401-470-2187 | Unanswered call from Cabral |
| 18. | 09/07/2023 | 7:59 AM | 401-470-2187 | Text message from Cabral |
| 19. | 09/07/2023 | 11:49 AM | 401-470-2187 | Unanswered call from Cabral |
| 20. | 09/07/2023 | 6:06 PM | 401-470-2187 | Unanswered call from Cabral |
| 21. | 09/07/2023 | 7:04 PM | 401-470-2187 | WhatsApp text message |
| 22. | 09/07/2023 | 7:04 PM | 401-470-2187 | WhatsApp text message |

37. Plaintiff did not have a preexisting relationship with Defendants, had never been a customer of Defendants nor had ever applied for solar panels or any other accounts with Defendants.

38. Defendants placed multiple unauthorized phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

39. No emergency necessitated any of the alleged calls.

40. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

**VICARIOUS LIABILITY OF DEFENDANT**

41. Defendant D2H through their authorized representatives Pereira and Cabral, hired the offshore telemarketers from Pakistan to make solicitation phone calls on their behalf.

42. Pereira and Cabral, agents of D2H were given actual authority to enter into telemarketing agreements on behalf of D2H.

9

43. Pereira and Cabral authorized the offshore telemarketer to make the phone calls at issue here.

44. D2H was aware of the phone calls being made by the offshore telemarketer and continued to accept referrals from the Pakistani telemarketer with full knowledge the calls violated the TCPA.

45. Failure to hold D2H vicariously liable for the authorized actions of offshore telemarketers would render the TCPA unenforceable and encourage all companies to offshore their telemarketing operations.

## PERSONAL LIABILITY OF DEFENDANTS PEREIRA AND CABRAL

46. Defendant Pereira is personally liable because Defendant Pereira participated in the calling campaign by personally conducting the Zoom interview with Plaintiff that was scheduled as a direct result of the TCPA-violating phone calls.

47. Defendant Cabral is personally liable because Cabral placed multiple direct phone calls to Plaintiff despite being told not to call Plaintiff again.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

48. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

49. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

50. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

51. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and

more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

52. The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## COUNT ONE:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

53. Plaintiff incorporates the preceding paragraphs 1-52 as if fully set forth herein.

54. The foregoing acts and omissions of Defendant D2H and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

55. Defendant D2H and/or their agents, called Plaintiff's private residential telephone which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the alleged calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

56.     Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(c)(3)(F) by Defendant D2H's calls described above, in the amount of $500 per call.

57.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

58.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants for seventeen (17) calls;

E.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

F.      An award to Mr. Callier of interest,  and costs, as allowed by law and equity;

G.      Such further relief as the Court deems necessary, just, and proper;


September 18, 2023,

Respectfully submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

13